IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | CHAPTER: | 7 |
| STREAMLINE PRODUCTION GROUP, LLC, | ) | CASE NO.: | 3:23-bk-02638 |
| | ) | JUDGE: | Walker |
| Debtor. | ) | | |
| | ) | | |
| EVA M. LEMEH, TRUSTEE, | ) | ADV. PROC. NO. | 3:25-ap-90071 |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| NO NAME GROUP, LLC, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS ADVERSARY PROCEEDING**

Defendant No Name Group, LLC ("NNG") respectfully files this memorandum of law (the "Memorandum") in support of its pending *Motion to Dismiss Adversary Proceeding* (the "Motion"). In the Motion, NNG seeks dismissal with prejudice of this action—inclusive of all claims asserted in the *Amended Complaint* (Adv. Doc. No. 24) (the "Amended Complaint")—pursuant to Fed. R. Bankr. P. 7012(b)(6) and Fed. R. Civ. P. 12(b)(6). Plaintiff Eva M. Lemeh, Trustee (the "Trustee"), solely in her capacity as trustee for the bankruptcy estate of Debtor Streamline Production Group, LLC (the "Debtor"), has failed to state a claim for which relief may be granted. Accordingly, the Court should dismiss this action with prejudice.

In support, NNG states as follows:

**INTRODUCTION**

This is not the first complaint filed by the Trustee against NNG. The Trustee initiated this adversary proceeding on July 21, 2025 by filing a *Complaint* and asserting a claim for "Successor

Liability and Alter Ego" (the "<u>Original Complaint</u>"). [Adv. Doc. No. 1]. In the Original Complaint, the Trustee made certain allegations about NNG and the Debtor, including the following:

1. The Debtor—an event planning company—filed a chapter 7 bankruptcy case on July 25, 2023 (the "Petition Date"), creating a bankruptcy estate of the Debtor's property that existed on that date. [Adv. Doc. No. 1, ¶¶ 6-7].

2. After these two bankruptcy filings, Justin Zebell—the Debtor's principal—created NNG, another event planning company. [*Id.* at ¶¶ 8, 10].[1]

3. "Zebell and No Name sought to shift any valuable assets (including intellectual property and other intangible assets) away from the Debtor and leave all debt in the corporate shell of the Debtor. . . ." [*Id.* at ¶ 18].

In later pleadings, the Trustee asserted, "No Name's owner simply moved *substantially all* of Debtor's assets to No Name. Now all that remains is a hollowed-out debtor that leaves creditors holding the bag. . . ." [Adv. Doc. No. 12 (emphasis added)].

This was puzzling to NNG, as it is the *opposite* of what the record in this case demonstrates. On September 15, 2023—less than two months after the Petition Date—the Trustee filed a motion to employ McLemore Auction Company and to sell substantially all the Debtor's business assets and split the proceeds with Fourth Capital Bank (the "Bank")—which held three separate secured claims totaling more than $2 million—on an 80/20 basis. [*See* Bankr. Doc. Nos. 12-13; Claim Nos. 13-15]. The Court approved that sale on October 10, 2023, and the Trustee confirmed the conclusion of that sale on November 29, 2023. [Bankr. Doc. Nos. 24, 34]. As set forth in the *Trustee's Report of Sale*, the Trustee grossed $171,512.27 from the sale of **537 items** to **57 winning bidders.** [*Id.*]. Two months later, on December 5, 2023, the Trustee sold additional property of the estate housed in a warehouse in New Jersey, which consisted of bags, banners, boxes, easels, and other miscellaneous property. [*See* Bankr. Doc. Nos. 38, 54]. The Trustee also rejected all

---

[1] Contemporaneously with the Debtor's bankruptcy filing, Mr. Zebell also filed a chapter 7 bankruptcy case in this Court, Case No. 3:23-bk-02637. He received a discharge on December 21, 2023. [*See* Doc. No. 31 therein].

executory contracts of the Debtor by operation of law two years ago after failing to affirmatively assume them within sixty days of the Petition Date. *See* 11 U.S.C. § 365(d)(1).

Despite this complete liquidation of property, the Trustee claimed that the Debtor transferred "substantially all" of its assets to NNG post-petition. It is therefore not surprising that the allegedly wrongfully transferred assets were not specifically defined, but instead vaguely referenced as "unfinished contracts and intellectual property." [Adv. Doc. No. 1, ¶ 16].

Following a thorough review of the allegations, the Court entered its own order—*sua sponte*—dismissing the claims in the Original Complaint. [Adv. Doc. No. 21]. In this order, the Court permitted the Trustee to file an amended complaint, provided she "identify specific post-petition transfers of estate property and articulate a viable theory for which the estate may recover the assets or the value that was transferred." [*Id.*].

The Trustee then filed the Amended Complaint. [Adv. Doc. No. 24]. However, she did not remedy the flaws identified by the Court. In fact, she doubled down on the hyperbole contradicted by the plain record. She alleges as follows:

1. "Right after its creation, Debtor transferred *substantially all of its assets* to No Name, including computers of Debtor; services contracts that Debtor executed with customers; and the goodwill of other non-contracted customers, employees, and vendor." [*Id.* at ¶ 11 (emphasis added)].

2. "Debtor transferred its computers, contracts, and goodwill to No Name." [*Id.* at ¶ 16].

3. In support of her claim for a voidable post-petition transfer under Section 549, she alleges only, "As stated before, Debtor transferred assets, both tangible and intangible, to No Name soon after its creation the day following the Petition Date." [*Id.* at ¶ 25].

NNG remains confused as to how the Trustee can sell more than five hundred items of tangible property—large and small—and reject all executory contracts, then allege *two years later* that the Debtor transferred *substantially all* of its assets to NNG the day after the Petition Date. But that is what she has done.

The Trustee contends that the ostensible transfer of these undefined assets warrants a declaration that NNG is vicariously liable for 100% of the Debtor's debts to its creditors under a successor liability theory. She also seeks relief under 11 U.S.C. § 549 to recover the "property of the estate" that was "transferred" to NNG after the Petition Date.

The Trustee's new claims fail for the following reasons:

**First**, the successor liability claim fails because the Debtor did not transfer all—or even a fraction of—its assets. On the contrary, the Trustee herself *sold* substantially all of the Debtor's assets and rejected the contracts that she now claims had some value. This is an essential element for successor liability as discussed below, and its absence is confirmed by the undisputed record in the case. Moreover, to the extent a sufficient transfer of assets occurred, the transfer was not for "less than adequate consideration"—another essential element of successor liability—given that (a) the assets had no market value and (b) to the extent they had any value at all, they were valueless *to the estate* given the substantially undersecured lien remaining thereupon in favor of the Bank. [*See* Claim Nos. 13-15]. In the absence of these two essential elements, the Trustee's successor liability claim necessarily fails.

**Second**, the Section 549 claim fails because the Trustee has failed to plead facts indicating an actionable post-petition transfer that are plausible on their face. The Trustee identifies three categories of assets: contracts, goodwill, and computers. But rejected executory contracts are not property of the estate as a matter of law, and even if they were, the Amended Complaint contains no factual allegations regarding which were transferred or how they were transferred. The "goodwill" and computers allegedly transferred are similarly undefined. This is not sufficient to state a claim under Federal pleading standards.

For these reasons, NNG respectfully requests that the Court dismiss the Amended

Complaint with prejudice pursuant to Fed. R. Bankr. P. 7012(b)(6) and Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil Procedure 12(b) applies to adversary proceedings. Fed. R. Civ. P. 12(b)(6) provides for dismissal of a cause of action for "failure to state a claim upon which relief can be granted."

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ... allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 570 (2007). A court is not required to accept legal conclusions or "threadbare recitals of the elements of a cause of action." *Id*. The court is also not required to accept unwarranted factual inferences as true. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002).

## ARGUMENT

**I.     The Trustee has failed to state a claim for successor liability based on the "mere continuation" doctrine for which relief may be granted.**

The Trustee cites the unreported case of *RXAR Co., LLC v. Rheumatology Assoc., P.A.* as establishing the essential elements of a successor liability claim based on a new company being the "mere continuation" of an old company: "(1) the predecessor "transfers its assets" to the successor; (2) the successor company "pays less than adequate consideration for the assets"; (3) the successor company continues the predecessor's business; (4) both companies "share at least one common officer who was instrumental in the transfer"; and (5) the predecessor company "is left incapable of paying its creditors." 2017 WL 1511045, at *2 (M.D. Tenn. Apr. 27, 2017).

Here, the Trustee has failed to plead facts plausible on their face to satisfy the first two elements of this test.

### a. The Trustee does not plead facts plausible on their face to demonstrate a "transfer of assets" as required for successor liability.

The *RXAR* case derives the essential elements of the mere continuation doctrine from *IBC Mfg. Co. v. Velsicol Chem. Corp.*—a Sixth Circuit Court of Appeals case construing Tennessee law. 187 F.3d 635, 1999 WL 486615, at *2 (6th Cir. 1999). *IBC* provides additional clarity to this first element—a "transfer of assets." In rejecting a finding of "mere continuation," the court held, "There is scant evidence in the record that IBC purchased *all* of the assets of Chemwood," and "We believe the district court was correct in concluding that there was not a transfer of *all* of Chemwood's assets, and those that were transferred were done so for adequate consideration." *IBC*, 1999 WL 486615, at *3 (emphasis added). Thus, for "mere continuation" to apply, it is not enough that an insolvent company transfers an asset to a new company. It must transfer all or substantially all of its assets.

As a preliminary matter, NNG struggles to understand how the Debtor could have "transferred assets" to a successor as a matter of law at all when (a) the successor did not exist as of the Petition Date, meaning the transfer necessarily would have to occur post-petition, and (b) the Trustee has not formally abandoned any allegedly transferred assets from the estate. Absent abandonment, these "assets" remain property of the estate (other than the rejected executory contracts in which the estate voluntarily forfeited all rights). No transfer occurred at all. Successor liability simply does not apply in this context.

But even if successor liability could apply—and a transfer of some asset did occur—the undisputed record confirms that the assets allegedly transferred were not *all* of the Debtor's assets. They were not even *several* of the Debtor's assets. On the contrary, the Trustee sold substantially

6

Case 3:25-ap-90071    Doc 26    Filed 12/05/25    Entered 12/05/25 16:57:40    Desc Main
Document    Page 6 of 11

all of the Debtor's assets via two publicly conducted auction sales. The assets at issue here are those that allegedly remain following this liquidation: (a) *rejected* executory contracts, (b) undefined "computers" allegedly transferred to NNG but simultaneously still owned by the Debtor, and (c) undefined "goodwill," without any explanation for what this is (trademarks, patents, other intellectual property, etc.) or how NNG is purportedly using it. [*See* Adv. Doc. No. 24, ¶ 16]. Under the *IBC* framework, this is simply not sufficient to constitute a "transfer of assets" as required for successor liability via mere continuation even if the allegations were true. This alone warrants dismissal with prejudice of the successor liability claim.

> **b. The undisputed facts confirm that the assets allegedly transferred had no value to the estate, meaning even *zero* dollars of consideration was adequate.**

The Trustee claims that these three buckets of assets—computers, rejected contracts, and goodwill—were transferred for less than adequate consideration. This necessarily means the Trustee believes that they had some value to the estate despite not including them in her liquidation sale or otherwise taking any action to administer them for the past two-plus years. Not only is this allegation not plausible on its face. It is also legally impossible due to the senior lien position of the Bank.

The Bank filed multiple proofs of claim confirming a lien on all of the Debtor's assets—including the assets allegedly "transferred" to NNG—of more than $2 million. [*See* Claim Nos. 13-15]. These assets remain encumbered by these liens. To the extent they have any value at all, they have no value to the *estate*. They are fully underwater. Thus, the alleged consideration of $0.00 in exchange for the allegedly transferred assets subject to a $2 million perfected security interest is necessarily "adequate." This warrants dismissal of the Trustee's successor liability claim with prejudice.

## II. The Trustee has failed to state a claim for relief under 11 U.S.C. §§ 549 and 550.

The Trustee next contends that the Debtor's ostensible post-petition transfer of rejected executory contracts, computers, and "goodwill" violates 11 U.S.C. § 549 as an unauthorized post-petition transfer. 11 U.S.C. § 549 allows a trustee to avoid "a transfer of property of the estate" that (a) occurs after the commencement of a bankruptcy case and (b) is not authorized by the bankruptcy court.

The Trustee has failed to plead facts plausible on their face to prove an unauthorized post-petition "transfer of property of the estate" by the Debtor to NNG. Though the Trustee does not specifically identify any assets in her claim under Section 549—stating only that "Debtor transferred assets, both tangible and intangible, to No Name soon after its creation"—NNG presumes the Trustee references the same three assets identified in its successor liability claim. [*See* Adv. Doc. No. 24, ¶ 25]. Accordingly, it addresses its argument on an asset-by-asset basis.

### a. Rejected Contracts

As a preliminary matter, rejected executory contracts are not property of the estate capable of transfer. 11 U.S.C. § 365(d)(1) provides that an executory contract not affirmatively assumed by a chapter 7 trustee within 60 days of the Petition Date is automatically deemed rejected. Such rejection constitutes a breach of the contract by the debtor occurring immediately prior to the Petition Date. 11 U.S.C. § 365(g)(1). *See also In re Warren Estates Mobile Home Park, Inc.,* 1986 WL 16142, at *3 (6th Cir. Dec. 29, 1986) ("Under 11 U.S.C. § 365(d)(1), a trustee must affirmatively assume a[n] executory contract within 60 days of the order for relief in order for the contract to be included in the property of the estate."); *In re Lovitt,* 757 F.2d 1035, 1041 (9th Cir. 1985) ("Because rejection of an executory contract is retroactive to the date of the filing of the bankruptcy petition, such contract *never becomes part of the bankruptcy estate.*") (emphasis

added). It is undisputed that the Trustee rejected the allegedly transferred contracts by operation of law. Because the contracts cannot constitute property of the estate, their alleged "transfer" does not constitute a "transfer of property of the estate." This warrants dismissal of any Section 549 claim related to the rejected contracts as a matter of law.

Separately, however, there are no allegations plausible on their face to suggest a transfer of rejected contracts occurred at all. Executory contracts can be transferred only upon a court-approved assumption and assignment by the Trustee. That did not occur here. Accordingly, to the extent the estate did not breach the contract, it had every right to sue the non-debtor party for its non-performance. NNG, as a non-party, did not have legal standing to enforce the contracts it allegedly received. The absence of plausibly pled facts to support a post-petition transfer of executory contract rights mandates dismissal of the Trustee's Section 549 claim with respect to such contracts.

b. "Goodwill"

The Trustee has not pled facts plausible on their face to support a claim that the Debtor made an unauthorized post-petition transfer of "goodwill" that belongs to the *Debtor* as opposed to *Mr. Zebell individually*. The Debtor was an event planning company. As a service-based business, its value is inherently tied to the skills, relationships, and general know-how of its owner and principal, Mr. Zebell. These skills and relationships are inherently personal.

NNG does not dispute that a corporate debtor can theoretically own intangible property capable of administration by a trustee. Trademarks, trade dress, or even brand reputation could conceivably constitute an asset of the estate. But there is no allegation that NNG is using any of this theoretical intangible property. The Trustee does not allege that NNG is using the Debtor's name or logo. It therefore necessarily is not using any reputation or goodwill *of the Debtor* but

rather the inherent reputation and goodwill *of Mr. Zebell*. This is no different than a skilled carpenter continuing to work in carpentry—using his skills, relationships, and general know-how to serve customers—after an earlier carpentry company had closed and liquidated. Because the Trustee has failed to plead facially plausible facts to support a transfer of *the Debtor's* "goodwill" after the Petition Date, her Section 549 claim necessarily fails with respect to such intangible property.

### c. Computers

Finally, the Trustee has not pled facially plausible facts to support a post-petition transfer of computers. The Trustee has not identified anything specific about these assets. It is not clear what they are or where they are. What is clear, however, is that the Trustee sold 537 individual items at auction, including desks, chairs, tables, bookshelves, stools, ottomans, filing cabinets, lamps, rugs, photographs, picture frames, televisions monitors, computer monitors, and—significantly—iPads and laptop computers. [Bankr. Doc. No. 34]. Given this, NNG is unclear as to what specific computers the Trustee alleges it received from the Debtor, how NNG would be able to return such assets if it received them, or whether the costs of this adversary proceeding itself exceeds any conceivable liquidation value of such computers.[2]

Moreover, presuming these computers could be specifically identified, the Trustee pleads no facially plausible facts to suggest that the computers were "transferred" as opposed to remaining property of the estate and subject to a turnover claim under 11 U.S.C. § 542. If the computers were property of the estate on the Petition Date and have not been formally abandoned by order of this Court, they would presumably remain property of the estate and subject to a claim for turnover.

---

[2] The gross sale price (before fees, commissions, and sharing with the Bank) for each iPad—all of which were sold two years ago—was less than $450.00. [Doc. No. 34, p. 10]. The gross sale price of the laptop liquidated two years ago was only $165.00. [*Id.* at p. 14]. NNG can only assume the value of the alleged computers has declined considerably over the past two years.

But the Trustee did not plead a claim for turnover. She pled a claim for a post-petition transfer to NNG under 11 U.S.C. § 549.

Because the Trustee fails to plead facially plausible facts identifying any of the allegedly transferred computers or how they were transferred to NNG, the Trustee fails to state a claim for which relief may be granted under Section 549 with respect to the computers.

## CONCLUSION

The Court gave the Trustee an opportunity to more specifically state a claim for relief by pleading facially plausible facts articulating a recoverable legal theory against NNG. The Trustee failed to do so. Further opportunity for amendment would be futile.

For the foregoing reasons, NNG respectfully requests that this Court dismiss the Amended Complaint—and this Adversary Proceeding generally—with prejudice.

> Respectfully submitted,
>
> /s/ Henry E. ("Ned") Hildebrand, IV
> Henry E. ("Ned") Hildebrand, IV
> DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
> 9020 Overlook Boulevard, Suite 316
> Brentwood, Tennessee 37027
> 615.933.5851
> ned@dhnashville.com
> *Counsel for No Name Group, LLC*

## CERTIFICATE OF SERVICE

On December 5, 2025, the foregoing was served via CM/ECF on all parties consenting to electronic service in this case, and by U.S. Mail, postage prepaid to:

Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
*Counsel to Eva M. Lemeh, Trustee*

> /s/ Henry E. ("Ned") Hildebrand, IV
> Henry E. ("Ned") Hildebrand, IV